# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. James B. Clark, III |
| v. | : | Mag. No. 21-12067 |
| ANGEL CHAPARRO, DAMION JAMES, LUIS ORTIZ, AND HERMAN PRIDE | : | **CRIMINAL COMPLAINT** |

I, Jessica Norfleet, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

SEE ATTACHMENT A

I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this complaint is based on the following facts:

SEE ATTACHMENT B

continued on the attached pages and made a part hereof.

Jessica Norfleet
Special Agent
Federal Bureau of Investigation

**Special Agent Norfleet attested to this Complaint by telephone pursuant to FRCP 4.1(b)(2)(A)**

March 4, 2021
District of New Jersey

HONORABLE JAMES B. CLARK, III
UNITED STATES MAGISTRATE JUDGE

Signature of Judicial Officer

## ATTACHMENT A

### (Conspiracy to Deprive A Person of Civil Rights)

On or about August 17, 2020, in Essex County, in the District of New Jersey, and elsewhere, defendants

> ANGEL CHAPARRO,
> DAMION JAMES,
> LUIS ORTIZ, AND
> HERMAN PRIDE

knowingly and willfully conspired and agreed with each other and others to injure, oppress, threaten, and intimidate the Victim in the free exercise and enjoyment of the rights secured to the Victim by the Constitution and laws of the United States, namely, the right secured to pretrial detainees by the Due Process Clause to be free from the use of unreasonable force by a person acting under color of law.

In violation of Title 18, United States Code, Section 241.

**ATTACHMENT B**

I, Jessica Norfleet, am a Special Agent with the Federal Bureau of Investigation. I am aware of the facts contained herein based upon briefings with other law enforcement officers who have interviewed witnesses in this matter. I also have reviewed evidence, including surveillance videos, reports, and medical records. Because this complaint is being submitted for the limited purpose of establishing probable cause, I have not set forth herein each and every fact that I know or that has been told to me concerning this investigation. Unless specifically indicated, any statements herein attributed to individuals are set forth in substance and in part.

1. At times relevant to this Complaint:

   a. Defendants ANGEL CHAPARRO ("CHAPARRO"), DAMION JAMES ("JAMES"), and LUIS ORTIZ ("ORTIZ") were Correctional Officers employed at the Essex County Correctional Facility ("ECCF") in Newark.

   b. Defendant HERMAN PRIDE was a Sergeant employed at ECCF.

   c. Co-Conspirator 1 was a Sergeant employed at ECCF.

   d. Co-Conspirator 2 was a Lieutenant employed at ECCF.

   e. The Victim was a federal pretrial detainee housed at ECCF. The Victim was charged by federal criminal complaint with conspiracy to distribute fentanyl and heroin.

2. According to the Victim, on or about the evening of August 17, 2020, while in his pretrial detention cell ("Cell 1"), the Victim squirted a mixture of urine, yogurt, and milk onto a correctional officer. As a result, the Victim was transported from Cell 1 to a disciplinary cell ("Cell 2"). Three officers, subsequently identified as CHAPARRO, JAMES, and ORTIZ, escorted the Victim to Cell 2. Co-Conspirator 1 and Co-Conspirator 2 also escorted the Victim to Cell 2, and as they approached Cell 2, PRIDE joined.

3. Upon entering Cell 2, according to the Victim, CHAPARRO, JAMES, and ORTIZ began to conduct a strip search. The Victim placed his hands on his head. The officers never completed the strip search. Shortly after they began the strip search, JAMES struck the Victim on the Victim's body. The other officers, CHAPARRO and ORTIZ, joined in the assault, likely as punishment for the Victim having squirted a substance containing urine onto a correctional officer. The Victim eventually fell to the ground, and the officers held him down and continued to assault him. PRIDE did not assist in the assault, but the

Victim saw PRIDE standing inside Cell 2 watching the assault. PRIDE did not at any point attempt to stop the assault.

4. After the officers departed Cell 2, the Victim noticed that JAMES' watch had fallen off during the assault. According to the Victim, JAMES and other officers returned to retrieve JAMES' watch. They opened the door to Cell 2, and the Victim slid the watch to them.

5. The Victim was not offered medical treatment immediately following the assault. Later that night, according to the Victim, PRIDE visited the Victim at Cell 2. The Victim told PRIDE that the Victim needed medical attention, and the Victim further stated that the Victim would lie and say he had fallen off his bed if PRIDE would simply provide him with medical attention. PRIDE did not provide the Victim with medical attention.

Witnesses

6. Several witnesses have corroborated the Victim's account:

    a. One correctional officer witnessed CHAPARRO, JAMES, and ORTIZ punching the Victim multiple times; confirmed that PRIDE, Co-Conspirator 1, and Co-Conspirator 2 took no action to intervene or stop the assault; saw the Victim was in a protective position – not resisting or fighting back – during the assault; and heard "thumps" coming from the cell, consistent with an assault.

    b. A second correctional officer witnessed JAMES and others return to Cell 2, after the assault, to retrieve JAMES' watch. This officer also heard sounds from Cell 2 consistent with an assault. And, at the end of the assault, this officer heard PRIDE say, "okay, that's enough."

    c. A few days after the assault, a third correctional officer spoke to ORTIZ about the assault on the Victim. ORTIZ told this officer that the Victim had thrown something on a correctional officer. ORTIZ indicated that he had responded to the scene. ORTIZ then told this officer that the Victim got beat up and that "they whooped his ass." ORTIZ further told this officer that the Victim had been beaten up in a cell.

Surveillance Video

7. Law enforcement obtained surveillance video of certain sections of ECCF before, during, and after the assault of the Victim. The surveillance video showed CHAPARRO, JAMES, and ORTIZ escorting the Victim to Cell 2, and it showed PRIDE, Co-Conspirator 1, and Co-Conspirator 2 following closely behind. After the Victim entered Cell 2, the surveillance video showed PRIDE inside Cell 2, close to the door, and it showed Co-Conspirator 1 and Co-

4

Conspirator 2 standing outside Cell 2 and looking in. The door to Cell 2 was open. The surveillance video showed two other officers walk in front of Cell 2 during the assault.

8. After the officers departed Cell 2, following the assault, the surveillance video showed ORTIZ, JAMES, CHAPARRO, and PRIDE returning to Cell 2, likely to retrieve JAMES' watch, and then exiting.

### The Victim's Injuries

9. On or about August 19, 2020, the supervisory officer in charge of the housing unit that contained Cell 2 spoke to the Victim, and the Victim stated that he wanted medical attention. The supervisory officer observed the Victim's face, and it appeared to be swollen and discolored. When the Victim opened his mouth, the supervisory officer heard a clicking noise. The supervisory officer asked the Victim what had happened, and the Victim responded, "you know what happened, you know what happened." The supervisory officer believed that the Victim's injuries were severe enough to constitute an emergency situation, and the supervisory officer subsequently took the Victim to the ECCF medical facilities. The Victim subsequently was taken to the emergency room at University Hospital in Newark.

10. At University Hospital, the Victim told the doctor that the Victim had been "assaulted by officers" and that the Victim had severe pain in his jaw. The Victim was diagnosed with large swelling and tenderness in the right side of his face, and discoloration and bruising around his right eye.

### Use of Force Policy

11. The ECCF "Use of Force" Policy specified, among other things, that "use of force is never used as punishment," that inmates "subjected to use of force shall be seen by medical staff as soon as possible"; and that "following the use of physical force, written reports shall be prepared and completed before the completion of the tour of duty by the custody staff members involved." According to ECCF training records, CHAPARRO, JAMES, ORTIZ, and PRIDE all had received training on the "Use of Force" policy during their employment as ECCF Correctional Officers.

12. Following the assault of the Victim, CHAPARRO signed a "Strip/Body Cavity Search Report." In the section of the report titled, "If applicable, Reason for Use of Force," the report falsely stated, "N/A" or "Not applicable." In fact, CHAPARRO, JAMES, and ORTIZ assaulted the Victim, while PRIDE, Co-Conspirator 1, and Co-Conspirator 2 stood by and watched. All of them were required to fill out use of force reports. None of them did so.